IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLAS BOCANEGRA,

        Plaintiff,

                                      3:13-cv-00705-PK

v.                                        OPINION AND ORDER

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Nicholas Bocanegra ("Bocanegra") seeks judicial review of the Commissioner of Social Security's final decision denying his applications for social security insurance ("SSI") and disability insurance benefits ("DIB") under Titles II and IX of the Social Security Act (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). I have

considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482

U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* SSR 96-8p, 1996 WL 374184.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; see also 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing Court must affirm an Administrative Law Judge's decision if the ALJ applied the proper legal standards and his findings are supported by substantial evidence in the

record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* The Court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## BACKGROUND

Born in August, 1978, Bocanegra was 19 years old on the alleged onset date of March 31, 1998. Tr. 205, 241.[1] He protectively filed for SSI and DIB on July 9, 2009, alleging disability due to Crohn's disease and posttraumatic stress disorder ("PTSD"), and later amended his onset date to December 31, 2007. Tr. 240-40. After his applications were denied initially and on reconsideration, Bocanegra requested a hearing before an ALJ. Tr. 128-30. He appeared and testified before ALJ Riley Atkins on June 27, 2011 and on December 7, 2011. Tr. 54-75, 76-115.

Bocanegra served in the U.S. Army and has past work experience as a U.S. Army scout, a lifeguard, and a personal trainer. Tr. 242. He received a medical discharge from the Army in

October, 2000, after undergoing two surgeries to address conditions caused by Crohn's disease. Tr. 406. In 2001, the VA issued a rating decision stating that Bocanegra had a 60 percent service-connected disability due to "Crohn's disease with residuals of chronic diarrhea, chronic fatigue, malabsorption and anemia." Tr. 414. In 2011, the VA issued a rating decision stating that Bocanegra suffered from an 80 percent service-connected disability as of May, 2009. Tr. 42-44, 329.

Bocanegra earned a B.S. degree in general science from the University of Oregon in 2001. While working as a full-time student, Bocanegra also held jobs as a lifeguard and a supervisor. Tr. 83, 93-96, 218-21, 322. After earning his Bachelor's degree, Bocanegra became a certified personal trainer for Court Sports. Tr. 97-98, 221, 262, 265. He was eventually terminated from his position at Court Sports for harassing a female coworker. Tr. 101, 1543, 1645, 2047.

Regarding his subjective symptoms, Bocanegra testified that he uses the bathroom up to 15 times per day, and that no medication completely controls his symptoms. Tr. 86-87, 90. Although he worked as a personal trainer in 2006 and 2007, he had only one client and his performance was affected by anxiety. Tr. 97-99. Bocanegra testified that he spends many days in bed and is afraid to leave his apartment. Tr. 99. Bocanegra received treatment for alcohol abuse in 2004. Tr. 102-05.

On December 19, 2011, ALJ Atkins issued a decision finding Bocanegra not disabled. Tr. 32-47. The Appeals Council denied Bocanegra's subsequent request for review, making the

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed

6 – OPINION AND ORDER

ALJ's decision the final decision of the Commissioner. Tr. 2-7; *see* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This appeal followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Bocanegra engaged in substantial gainful activity from 1998-2000 and 2006-2007. Tr. 37. At the second step, the ALJ found that Bocanegra had the following severe impairments: Crohn's disease, alcohol dependence, major depressive disorder, "social phobia vs. [PTSD]," attention deficit hyperactivity disorder, and "cannabis abuse vs. dependence." Tr. 37. Because Bocanegra's impairments were deemed severe, the ALJ properly proceeded to the third step of the analysis. *Id.*

At the third step, the ALJ found that none of Bocanegra's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 39. The ALJ therefore conducted an assessment of Bocanegra's RFC. Tr. 40-41. The ALJ found that during the relevant adjudication period Bocanegra could perform a light work with the following limitations: he could occasionally climb, stoop, kneel, crouch, and crawl; he could frequently balance; he required reasonable access to a restroom; he was limited to simple, routine, repetitive work with little public contact; and he could engage in minimal contact with coworkers. *Id.* At the fourth step of the five-step process, the ALJ found that Bocanegra could perform past relevant work as a cashier. Tr. 45. At step five, the ALJ determined that Bocanegra could also perform jobs that exist in significant numbers in the national economy. Tr. 46. The ALJ concluded that Bocanegra was not disabled. Tr. 47.

---

herein as Docket No. 14.

## ANALYSIS

Bocanegra argues that the Commissioner erred because he (1) improperly rejected the VA disability rating; (2) improperly evaluated the medical opinion of Benjamin Barreras, M.D.; (3) improperly rejected the lay witness testimony of Jeff Fryer and Carol Alderich; and (4) improperly assessed Bocanegra's RFC.

### I. VA Disability Rating

Bocanegra first argues that the ALJ improperly rejected his VA disability rating. Pl.'s Br. 28-29. The VA renders determinations of disability based on criteria distinct from those of the Agency. Tr. 43; *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002). While the ALJ is required to consider a VA rating, the ALJ may "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Valentine v. Comm'r*, 574 F.3d 685, 695 (9th Cir. 2009). For example, the ALJ may reject a VA rating decision based on the ALJ's evaluation of evidence that was not before the VA. *Id.* at 695.

In March, 2011, the VA found Bocanegra had a combined service-connected disability of 80 percent as of May, 2009. Tr. 42-44, 329. The letter from the VA states that Bocanegra is totally and permanently disabled due to his service-connected disabilities. *Id.* The ALJ gave little weight to the VA rating because it failed to address Bocanegra's alcohol abuse or his recent work history as a lifeguard, supervisor, and personal trainer. Tr. 43, 83, 93-98. The record shows that Bocanegra began drinking up to 12 beers per day in 2001, and received alcohol abuse treatment prior to the 2009 VA rating decision, but the VA decision contains no reference to alcohol abuse. Tr. 329, 2427. Further, Bocanegra's work activities in 2007, and the fact that he stopped working at Court Sports for reasons other than his alleged disability or related

symptoms, arguably contradicted the VA's finding that Bocanegra was 80 percent disabled as of 2009. *See* Tr. 101, 1543, 1645, 2047. On this record, it was reasonable for the ALJ to reject the 2011 VA rating decision. *Valentine*, 574 F.3d at 695. The ALJ's rejection of the VA disability rating is therefore upheld.

## II. Medical Evidence

Bocanegra next argues that the ALJ improperly rejected medical evidence of low Global Assessment of Functioning ("GAF") scores as assessed by treating psychiatrist Benjamin Barreras, M.D.[2] Pl.'s Br. 29. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of treating, examining, and non-examining physicians. The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints,

---

[2] A GAF score "is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

9 – OPINION AND ORDER

inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). It is legal error to ignore an examining physician's medical opinion without providing reasons for doing so, and an ALJ effectively rejects an opinion where he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

Between 2007 and 2011, Bocanegra's GAF score was assessed in the 40 to 55 range. Tr. 1231, 1272, 1419, 1545, 2462, 2306-07, 2475. The lowest of these scores were assessed by treating psychiatrist Benjamin Barreras, M.D. *See* Tr. 2306, 2430. For example, Dr. Barreras assessed Bocanegra's GAF rating at 50 in December, 2010, and at 40 in May, 2011. Tr. 105, 2306, 2430. A GAF score of 40 can indicate severe limitations in psychological functioning.

The ALJ considered Dr. Barrera's opinion, but rejected it to the extent that it conflicted with other medical evidence in the record. Instead, the ALJ gave some weight to the medical opinion of examining psychologist Patrick Ethel-King, Ph.D. Tr. 42. Dr. Ethel-King performed a psychological consultative exam in August, 2011, and opined that Bocanegra's ability to understand, remember, and carry out instructions was not affected by his impairments. Tr. 2673-75. Dr. Ethel-King also noted that Bocanegra's ability to interact with supervisors, coworkers, and the public was similarly unaffected. *Id.* The medical record thus contradicts any implication that Bocanegra was completely disabled due to his low GAF scores. The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Barreras's controverted opinion. *Lester*, 81 F3d at 830.

10 – OPINION AND ORDER

Here, the ALJ found that the medical record as a whole supported the finding that Bocanegra was capable of substantial gainful activity despite his GAF scores. For example, Joshua Boyd, Psy.D., assessed Bocanegra's mental RFC in July, 2009 and opined that Bocanegra had the residual functional capacity to perform simple, routine, repetitive work with little public contact and minimal contact with coworkers. Tr. 1534-37. Dr. Boyd's medical opinion is consistent with Bocanegra's GAF ratings ranging from 51 to 55, which indicate only moderate symptoms or functional impairment. The medical record as a whole is consistent with the opinions of Drs. Ethel-King and Boyd, and the ALJ was entitled to reject the low GAF scores assessed by Dr. Barreras in order to resolve any apparent conflict in the medical record. *Tommasetti*, 533 F.3d at 1040; *Carmickle*, 533 F.3d at 1164. The ALJ's evaluation of the medical evidence, including the evidence of Bocanegra's low GAF scores, was supported by substantial evidence and is therefore affirmed.

### III. Lay Testimony

Bocanegra also argues that the ALJ improperly rejected the lay testimony of Jeff Fryer and Carol Alderich. Pl.'s Br. 30. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511.

Jeff Fryer was Bocanegra's employer at River Road Park and Recreation District between 2001 and 2007. Tr. 322. Mr. Fryer wrote a letter dated November, 2007, regarding Bocanegra's employment performance. *Id.* Mr. Fryer noted that Bocanegra had problems with attendance and performance on daily work tasks. Tr. 322-23. For example, Mr. Fryer wrote that Bocanegra was over 10 minutes late 6 times in one month of his employment at River Road Park and Recreation District. *Id.* Mr. Fryer's letter suggests that Bocanegra was unable to fulfill his work commitment in part because of his full-time college workload. *Id.*

The ALJ credited Mr. Fryer's opinion, and found that Bocanegra was capable of simple, repetitive, routine work with little public contact and minimal coworker contact. Tr. 40-41. This RFC is not inconsistent with Mr. Fryer's assessment of Bocanegra's difficulties balancing part-time work with the demands of college. *Magallanes*, 881 F.2d at 750 (the Court must uphold the ALJ's reasonable conclusions where the evidence is susceptible to more than one rational interpretation). The ALJ therefore did not reject Mr. Fryer's opinion and was not required to justify his treatment of Mr. Fryer's statements.

In December, 2011, Carol Alderich, volunteer coordinator and assistant at the North Plains Public Library, also submitted a letter to the Agency regarding Bocanegra's limitations. Tr. 903. She stated that the library "entered into a partnership to provide quality Occupational Skills Training for ... Bocanegra" as a volunteer library assistant. *Id.* Ms. Alderich stated that Bocanegra was on a flexible schedule due to his "many health related appointments." The letter suggests that Bocanegra's flexible hours are not available to regular library employees. *Id.*

The ALJ arguably incorporated the limitations set forth in Ms. Alderich's opinion in the RFC assessment. To the extent that the ALJ rejected Ms. Alderich's opinion as to Bocanegra's

12 – OPINION AND ORDER

limitations on attendance, it was in favor of the medical opinions of Drs. Ethel-King and Boyd. Tr. 42-45. Conflict with the medical record is a sufficiently germane reason for rejecting lay testimony. *Lewis*, 236 F.3d at 512. Here, the medical record supports the ALJ's RFC finding that Bocanegra is capable of performing light work with some limitations. On this record, the ALJ did not err in his treatment of the lay testimony, and his reasoning is affirmed.

## IV.   RFC Assessment

Bocanegra argues, finally, that the ALJ erred because the RFC did not capture the opinion of consultative psychiatrist Joshua Boyd, Psy.D. Pl.'s Br. 31-32. In July, 2009, Dr. Boyd assessed Bocanegra's mental RFC and stated that Bocanegra has moderate limitations in concentration, persistence, pace, and social interaction. Tr. 1534-36. Dr. Boyd also indicated that Bocanegra would work best with a supervisor who is not overly harsh or critical. Tr. 1536.

The ALJ limited Bocanegra to simple, routine, repetitive work with little public contact and minimal contact with coworkers. Tr. 40-41. This adequately captured Bocanegra's limitations with respect to pace and social interactions. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008). The ALJ is not required to incorporate into the RFC limitations that the ALJ properly rejected. *Id.* at 1175-76.

Bocanegra argues that the ALJ erred because the RFC does not include any explicit limitations on attendance or on working with supervisors. Tr. 33. The Court rejects this argument. First, Dr. Boyd's opinion does not indicate that plaintiff is incapable of working with supervisors; rather, it suggests that he would work best with a supervisor that is "understanding and not overly harsh/critical." Tr. 1536. In the same treatment note, Dr. Boyd opined that

13 – OPINION AND ORDER

Bocanegra was capable of sustaining a typical workweek "[without] significant interruptions from psych[ologically] based symptoms." *Id.*

Second, as discussed above, the lay opinion evidence that Bocanegra had significant limitations in attendance was controverted by the opinions of Drs. Ethel-King and Jensen. On this record, the ALJ's conclusions as to Bocanegra's residual functional capacity, while debatable, were based on a reasonable interpretation of the credible evidence. If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes*, 881 F.2d at 750. Because the RFC was based on a reasonable interpretation of credible evidence in the record, the ALJ's decision is upheld.

## CONCLUSION

The ALJ's decision finding Bocanegra not disabled is supported by substantial evidence in the record and is therefore affirmed.

Dated this 26th day of June, 2014.

Honorable Paul Papak
United States Magistrate Judge

14 – OPINION AND ORDER